Milton A. Wiltse, J.
The defendant was convicted by a jury on June 2, 1960, before the Honorable Joseph Oxley, Justice of the Peace of the Town of Antwerp, for a violation of subdivision 5 of section 70 of the Vehicle and Traffic Law. Judgment was entered on that date. From such judgment, defendant appeals.
It appears from the return, that an information was sworn to by a member of the State Police, before the Justice of the Peace on May 6, 1960, which charged the defendant with having committed the aforesaid offense on May 5, 1960. This information contained the statement that it was based on the information and belief of the informant. Thereafter, and on May 24, 1960, the prosecution, with the consent of the court, dismissed the original information dated May 6. Then a new information was sworn to by the same officer, before the Justice of the Peace, alleging the commission of the same crime, namely violation of subdivision 5 of section 70 of the Vehicle and Traffic Law, and charging its commission at the same time and place in the Town of Antwerp, as did the first information. He was convicted of the charge under the new information on June 2.
The second information was not based on information and belief, and sufficiently set forth acts to constitute the offense charged.
The return further shows that upon the arraignment of the defendant on May 6, under the information which was later dismissed, the defendant was advised of all of his rights, including the provisions of section 335-a of the Code of Criminal Procedure. The pertinent provisions of that section are as follows: 1 ‘ A plea of guilty to this charge is equivalent to a conviction after trial. If you are convicted, not only will you be liable to a penalty, but in addition your license to drive a motor vehicle or motor cycle, and your certificate of registration, if any, are subject to suspension and revocation as prescribed by law.”
On May 24, when the defendant was arraigned on the new information charging commission of the same crime as was charged in the first information, the return sets forth that the defendant was advised of all of his rights, but does not specifr ically reveal that he was again informed of the provisions of section 335-a aforesaid. A panel of jurors was drawn after this arraignment and a date for trial was set. The names of the jurors were drawn in the presence of the defendant, his counsel having waived personal appearance at the time of the drawing of the panel.
*724 The defendant contends that there was a lack of instructions by the court, at the time of his arraignment on May 24. If informing the defendant of the provisions of section 335-a aforesaid was necessary on May 24, this contention might be well founded. All other instructions were given to the defendant on that date.
However, it does not appear that it was necessary on May 24 to again inform the defendant of the provisions of said section 335-a. He had already been advised of these provisions at the time of his arraignment on precisely the same charge on May 5. Again informing him of such provisions would have been meaningless, since he already knew the consequences that might ensue should he be convicted of the charge. Also, there was no plea of guilty entered in this case. The conviction followed a trial before a jury on June 2. (Matter of Astman v. Kelly, 2 N Y 2d 567.)
Another ground relied upon by the defendant for a reversal of the judgment is that some of the jurors were excused by the court prior to the day of trial.
Under section 707 of the Code of Criminal Procedure, the number of peremptory challenges that may be exercised by the defendant is limited to three. The record here reveals that the defendant exercised his three peremptory challenges before the jury was finally selected and sworn. Since he was not deprived of any of such challenges, the excusing of some of the jurors before the day set for the trial should not disturb the result. (People v. Kruger, 302 N. Y. 447.)
The defendant also alleges that error, occurred during the trial, when the court admitted evidence by a doctor regarding blood that he extracted from the defendant’s arm, for the purpose of having same tested for its alcoholic content. It is his contention that the doctor was treating him for injuries sustained, at the time the blood was taken, and that anything which transpired was a confidential communication, within the meaning of section 352 of the Civil Practice Act.
In this connection, the record discloses that the charge against the defendant arose as a result of circumstances surrounding a collision between his truck and an automobile on Route 11, in the Town of Antwerp, at or about 7:30 p.m. on the evening of May 5. The doctor came upon the scene of the accident shortly after it happened, and took the defendant to his office in the Village of Antwerp, where he examined him for an injury to his arm. Before the defendant left the office of the physician, an officer arrived. It appears from the record, that *725 at the time of the arrival of the officer, the doctor had completed his examination and treatment of the defendant. The substance of the conversation that then ensued was that the officer asked the defendant if he would submit to a blood test, to which he answered in the affirmative. The doctor was then asked if he would take a sample of the defendant’s blood for the purpose of having it examined. Although a physician-patient relationship had existed between the doctor and the defendant prior to the arrival of the officer, as far as the record discloses here, that relationship had been terminated before the defendant assented to the taking of the blood specimen. The doctor did nothing by way of treatment of the defendant while the officer was present, other than to take the blood sample, with the defendant’s consent. The specimen was then taken by the officer and delivered later to another officer, who in turn delivered it to a medical technologist who made the analysis.
It does not appear that the testimony of the physician, with regard to the taking of the blood from this defendant, was privileged. (People v. Barnes, 197 Misc. 477.) A physician’s testimony is only privileged when his information is ‘ ‘ acquired in attending a patient in a professional capacity ’ ’, and where such information was necessary to enable him to act in that capacity. (Civ. Prac. Act, § 352.)
In support of his contention that the taking of the blood specimen by the physician gave rise to a professional relationship, the defendant cites People v. Decina (2 N Y 2d 133). It is believed that the instant case has a distinctly different factual pattern than the case cited, and that the findings in the Decina case were not meant to apply to a state of facts such as exist here.
From the record, it does not appear that the verdict was against the weight of the evidence, as the defendant contends. The medical technologist testified that he analyzed the blood specimen on May 7, and that the blood at that time had an alcoholic content of fifteen hundredths of 1%, and that had the blood been analyzed in the evening of May 5, it would have contained no less than fifteen one-hundredths % of alcohol, by weight, stating further that between May 5 and May 7 some of the alcohol in the blood would have “ volatilated ” from the blood. There was testimony by a person who was a companion of the defendant during a portion of the afternoon of May 5 who stated that during the time that he was with the defendant he had observed him take three or four drinks. This same witness stated that he was not with the defendant at the time of the *726 accident in which the defendant was involved on Route 11, but that he had observed it occur, and that the defendant’s truck was traveling north on Route 11; that the car involved was traveling south on the same route, and that the defendant’s truck and the car collided on the southbound lane of the highway. The officer who signed the information testified that the defendant told him that he had been driving the truck which was involved in the accident; that he smelled an alcoholic odor on the breath of the defendant, after the accident; that his hair was disheveled; that his eyes were bloodshot; that his clothing was mussed; that he admitted having had two beers, and that in his opinion, the defendant was intoxicated when he saw him after the accident.
Another officer who was present at the scene described the defendant’s appearance, and stated that in his opinion he was intoxicated.
The companion of the defendant, who had been with him a portion of the afternoon, and who had observed the accident as mentioned above, on cross-examination by defense counsel, did testify that he would not say that the defendant was intoxicated on the evening of May 5, as did the physician who saw the defendant.
A question of fact was presented for the jury to determine, and its verdict was that the defendant was guilty of the charge. Considering the prima facie evidence that the defendant was in an intoxicated condition, by reason of the percentage of alcohol found to be present in his blood, and the testimony of the officers regarding his intoxication, the testimony regarding the portion of the highway in which the collision occurred, and all of the testimony that appears in the record, it appears that there is ample evidence to support the verdict of the jury.
The court sentenced the defendant to pay a fine of $100. This was paid. He was then placed on indefinite probation to the Jefferson County Probation Department. Since the sentence was executed by payment of the fine, he could not be placed upon probation.
Therefore, the sentence of the court should be modified to the extent that the placing of the defendant upon probation is deleted therefrom. That portion of the sentence imposing a fine of $100 remains.
As so modified, the judgment of conviction should be affirmed in all respects.